UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

ALLEN PULLEN,

    Plaintiff,

v.                                          Case No. 3:18-cv-1274-J-39MCR

T.A. BROWN, et al.,

    Defendants.
_____

# **ORDER**

## **I. Status**

Plaintiff Allen Pullen, an inmate incarcerated at Florida State Prison (FSP), initiated this action on October 31, 2018, by filing a civil rights complaint (Doc. 1; Complaint). Plaintiff is proceeding in forma pauperis (Doc. 11). Defendants have not been served with the Complaint because Plaintiff has not yet provided service copies despite this Court's order directing him to do so by December 21, 2018. See Order (Doc. 11). Before the Court are the following motions: (1) Plaintiff's "Amended Memorandum of Law in Support of [His] Motion for a TRO and Preliminary Injunction" (Doc. 12); (2) Motion for Appointment of Counsel (Doc. 14); and (3) three separate motions for temporary restraining order or preliminary injunction (Docs. 19, 21, 23).

## **II. Background**

In his Complaint, Plaintiff asserts claims of excessive force, including sexual assault, retaliation, and failure to provide medical care. See Complaint at 7-8. He also claims he was denied due process with respect to disciplinary charges brought against

him for aggravated battery on an officer. Id. at 8-9. Plaintiff's allegations stem from an incident that occurred on September 16, 2018. He alleges that officers came to his cell to take him for a mental health evaluation after he was charged with aggravated battery. Id. at 9. After Plaintiff voluntarily submitted to handcuffs, including a black box, "multiple officers ambushed [him] from behind, beat him extensively, and sexually battered [him] . . . until [he] was unconscious." Id. Plaintiff alleges that officers required him to shower before he was taken for a medical examination. Id. at 10.

Following the incident, Plaintiff spent five days in the prison infirmary. Id. However, Plaintiff asserts, he did not receive a post sexual assault evaluation or treatment. Plaintiff asserts that six Defendants have retaliated against him following the incident, and officers have threatened him against reporting the sexual assault. Id. at 7, 10. For instance, he states that Defendant Douglas visited his cell on September 24, 2018, to inform him that if he reported the sexual assault, "he would be killed." Id. at 10. The alleged retaliatory conduct also consists of a denial of food, destruction of personal property, and lack of response to his grievances and sick call requests. Id. at 11.

When he filed his Complaint, Plaintiff also filed a motion for entry of a temporary restraining order (Doc. 2). On November 5, 2018, the Court entered an Order denying his request, finding that he did not carry his burden of persuasion as to the four elements necessary to demonstrate entitlement to such relief. See Order (Doc. 8; TRO Order). In particular, the Court found that Plaintiff failed to address the elements necessary for an award of injunctive relief, including his "likelihood of success on the merits" and whether he faces irreparable injury. See TRO Order at 1, 4. The Court also informed Plaintiff that it could not order that the Florida Department of Corrections (FDC) transfer him to a

different institution and noted that the grievance records Plaintiff provided with his Complaint indicate that he has refused "group" treatment on six occasions, undercutting his claim that he has been denied mental health treatment. Id. at 3, 4. Because Plaintiff complained of recent threats to his life, the Court directed the Clerk to provide a copy of its Order and Plaintiff's filings to the Warden of FSP.

Plaintiff now asks the Court to reconsider its Order denying his request for injunctive relief (Doc. 12; Motion for Reconsideration). The Court will address the Motion for Reconsideration before addressing Plaintiff's other motions.

### III. Motion for Reconsideration

As a preliminary mater, while Plaintiff titles his filing as an "Amended Memorandum of Law" in support of his request for injunctive relief, he asks the Court "to reconsider the denial of his previous motion . . . to issue a TRO and Preliminary Injunction to ensure that he receive[s] proper mental health care." Motion for Reconsideration at 1. Thus, Plaintiff's motion is properly construed as a motion for reconsideration under Federal Rule of Civil Procedure 59(e) or 60(b).[1]

In his Motion for Reconsideration, which he supports with a declaration (Doc. 13; Reconsideration Declaration), Plaintiff states that he has "been threatened repeatedly, denied food, and endured a substantial loss of property." Id. at 2. He objects to the Court's

---

[1] Rule 59(e) applies when a party asks the court to alter or amend the judgment, while Rule 60(b) applies when a party seeks relief from a judgment or order. The courts apply the same standard whether a motion for reconsideration is brought under Rule 59(e) or Rule 60(b). See, e.g., Succullo v. United States, No. 8:16-CV-410-T-36TBM, 2017 WL 6383984, at *2 (M.D. Fla. Oct. 3, 2017). See also Church of Our Savior v. City of Jacksonville Beach, 108 F. Supp. 3d 1259, 1265 (M.D. Fla. 2015) (recognizing that courts analyze "similar factors" when ruling on a pre-judgment motion for reconsideration as those considered when ruling on a motion filed under Rule 59(e) or 60(b)).

3

TRO Order insofar as the Court informed him that it cannot direct the FDC to transfer him or to investigate the allegations of sexual abuse. Id. at 3, 6. Plaintiff asserts that the Court can order FDC to provide treatment for a serious medical need and can "recommend" an investigation. Id. Plaintiff also attempts to cure the deficiencies of his original motion for injunctive relief (Doc. 2) by providing an analysis of the elements the Court must consider when determining whether such relief is appropriate. First, Plaintiff asserts that he faces irreparable harm because "[t]en members of management and multiple officers have threatened 'a sexual assault that is going to be a lot worse,' or death." Id. at 3. He further states that he has still not seen a psychiatrist and rather than receiving treatment, he received a disciplinary report for "stating he's having issues." Id. According to Plaintiff, he "did everything he could do to inform the facility he had a serious medical need," and he now needs court intervention. Id. at 4.

Second, Plaintiff maintains that the balance of hardship favors him because the potential for harm that he faces is more severe than what Defendants will suffer if they are forced to provide him with mental health care, which, he maintains, they are constitutionally-required to provide anyway. Id. at 5. Third, Plaintiff claims he has demonstrated a likelihood of success on the merits because he has a serious medical need (mental illness) that has gone untreated, amounting to a constitutional violation. Id. at 3, 7. In addition, Plaintiff states that he is being housed in administrative confinement, which only serves to exacerbate his mental illness. Id. at 7. Presumably to demonstrate a likelihood of success on the merits, Plaintiff states that his voluntary submission to restraints on the day of the incident was captured by camera; he filed sick-call requests, which are in his medical file; he filed grievances, which he filed with the Complaint; "[t]here

4

is a record of legal mail to victim services and that request was ignored;" he has witnesses; he spent five days in the infirmary; and his property was taken. Id. Plaintiff also claims that he has sought relief through the prison grievance system, though his requests have been ignored or denied. Id. at 4, 7.

As to the fourth element, Plaintiff asserts that injunctive relief will serve the public interest because "[r]espect for the law, particularly by officials responsible for the administration of States['] correctional systems is in itself a matter of the highest public interest." Id. at 8. Plaintiff refutes the Court's observation that his grievance records indicate he denied "group" treatment. Id. In addition, in his declaration, Plaintiff suggests he was not individually offered mental health treatment; rather, he states that all inmates in the dorm are offered treatment, and they all refuse. See Reconsideration Declaration at 2. Plaintiff further states that group therapy is not a "suitable environment to discuss medication adverse reactions [sic] or thoughts of self harm." Reconsideration Motion at 8. He maintains that sick-call requests are the appropriate way to seek such treatment, but his sick-call requests have been denied or ignored. Id. at 4. In his declaration, Plaintiff acknowledges that he "was brought to [the] medical unit for a PREA [Prison Rape Elimination Act] eval[uation]" after the Court's Order was sent to the Warden of FSP; however, he states that the evaluation was limited to taking his blood pressure and pulse. Reconsideration Declaration at 2.

Since the date of the medical exam, November 6th, Plaintiff has endured additional threats. Id. at 2, 3. Plaintiff attributes the increase in threats to the Warden being placed on notice that he filed a Complaint. See id. For instance, Plaintiff reports that while in the exam room, the officer present warned him that he made "a lot of enemies by filing [a]

5

report," and he told Plaintiff that he better "be ready to deal with the consequences." Id. at 2. The following day, November 7th, Sergeant Weeks approached Plaintiff's cell multiple times verbally threatening him and telling him that he "made some enemies in administration." On November 12th, Plaintiff returned to his cell where he found a note that said, "kill yourself," with a razor blade taped to it. Id. On November 13th, Sergeant Weeks denied Plaintiff's request for water and told him to drink from the toilet. Id. On November 14th, two officers (Watson and Williams) banged on his cell window to get his attention and then ran their fingers across their necks in a threatening gesture.[2] Id. at 3. On the same day, he found "broken glass" in his food at lunch time. On November 16th, someone emptied the contents of his nasal spray bottle and replaced it with tabasco sauce. Id. Finally, Plaintiff asserts that he has been served "air trays" (trays with no food) on multiple occasions. Id. at 2, 3.

Plaintiff asserts that he is suffering irreparable harm by being denied mental health treatment for the sexual assault and for the adverse reactions he has to medications, by being deprived food, and by being deprived of his legal and religious books and materials, which he claims have been destroyed or confiscated. Id. at 3. As relief, Plaintiff seeks a preliminary injunction to order Defendants to cease their abuse; order that Plaintiff be housed in a mental health program; provide post sexual assault treatment; recommend an independent investigation into the incident that occurred on September 16, 2018;

---

[2] Watson and Williams are named as Defendants in the Complaint. See Complaint at 1, 6. Plaintiff says these are the two officers he "allegedly assaulted weeks earlier." Reconsideration Declaration at 3. He states that the Warden "has consistently placed Watson and Williams on bravo wing," which he notes is not their usual assignment. Id.

provide his diabetic diet on a Styrofoam tray; and reimburse Plaintiff for his missing property. Reconsideration Motion at 9-10.

A court has discretion to reconsider an order it has entered. See Mincey v. Head, 206 F.3d 1106, 1137 (11th Cir. 2000); O'Neal v. Kennamer, 958 F.2d 1044, 1047 (11th Cir. 1992). However, motions for reconsideration should be sparingly granted and considered with caution. See United States v. Bailey, 288 F. Supp. 2d 1261, 1267 (M.D. Fla. 2003), aff'd, 419 F.3d 1208 (11th Cir. 2005) ("When evaluating a motion to reconsider, a court should proceed cautiously, realizing that "in the interests of finality and conservation of scarce judicial resources, reconsideration of a previous order is an extraordinary remedy to be employed sparingly."). A party moving for reconsideration of an order must demonstrate "newly-discovered evidence or manifest errors of law or fact." Jacobs v. Tempur-Pedic Int'l., Inc., 626 F.3d 1327, 1344 (11th Cir. 2010) (quoting Arthur v. King, 500 F.3d 1335, 1343 (11th Cir. 2007) (per curiam)). See also Michael Linet, Inc. v. Village of Wellington, Fla., 408 F.3d 757, 763 (11th Cir. 2005); In re Kellogg, 197 F.3d 1116, 1119 (11th Cir. 1999). The purpose of a motion for reconsideration is not to ask the Court to "reexamine an unfavorable ruling." Jacobs, 626 F.3d at 1344. A party may not use a motion for reconsideration as a means "to relitigate old matters, raise argument or present evidence that could have been raised" previously. Michael Linet, Inc., 408 F.3d at 763 (holding the district court properly denied plaintiff's Rule 59(e) motion because plaintiff merely "disagreed with the district court's treatment of certain facts and its legal conclusions").

The Court has carefully reviewed Plaintiff's Motion for Reconsideration and determined that it lacks merit. Plaintiff primarily seeks to relitigate old issues, which is not

7

an appropriate use of a motion for reconsideration. See id. Moreover, Plaintiff does not identify an intervening change in controlling law, new evidence, or a need to correct a clear error to prevent manifest injustice. See Jacobs, 626 F.3d at 1344. Plaintiff merely reiterates the grounds he asserted in his motion for temporary restraining order (Doc. 2). While Plaintiff addresses the preliminary injunction elements, provides more factual detail, and describes new instances of retaliation, including physical threats, he offers no new evidence that would warrant a change in the Court's ruling.

To the extent Plaintiff disputes the Court's conclusion that his grievances belie his assertion that he has been denied mental health treatment, the rebuttal he offers fails to show that the Court's Order denying his motion for injunctive relief was based on a manifest error of law or fact. Notably, Plaintiff does not dispute having been offered "group" treatment. He merely disputes the efficacy of group treatment and would prefer that treatment be offered to him on an individual basis. See Reconsideration Declaration at 2; Motion for Reconsideration at 8. Moreover, the additional grievance documents Plaintiff provides in support of his Motion for Reconsideration contradict his assertion that he has been denied mental health treatment. For instance, a grievance response dated November 9, 2018, states that Plaintiff "refused mental health services on 9/24/18." Reconsideration Declaration at 5. He was reminded that "sick call is available" to him to address any health care concerns he has. To the extent Plaintiff disputes that he was offered mental health treatment on September 24, 2018, his assertion is unsupported. The Court may not enter an order for injunctive relief based on unsupported, self-serving allegations.

Moreover, in support of his assertion that he demonstrates a likelihood of success on the merits, Plaintiff offers only case cites and summarizes general Eighth Amendment jurisprudence regarding prisoners' rights to constitutionally-adequate medical care. See Motion for Reconsideration at 6-7. Demonstrating that the Eighth Amendment guarantees a prisoner's right to medical care is not the same as demonstrating that prison officials have denied a prisoner constitutionally-adequate medical care such that injunctive relief is warranted. Plaintiff offers no substantiating evidence to demonstrate that he is entitled to the drastic remedy of injunctive relief.

To the extent the Plaintiff renews his request for a transfer to a mental health unit, this Court is unable to direct the FDC to house him in a particular institution. See, e.g., McKune v. Lile, 536 U.S. 24, 39 (2002) ("It is well settled that the decision where to house inmates is at the core of prison administrators' expertise."); Barfield v. Brierton, 883 F.2d 923, 936 (11th Cir. 1989) ("[I]nmates usually possess no constitutional right to be housed at one prison over another."). To the extent Plaintiff suggests that this Court can "recommend" that his allegations of sexual assault be investigated, the Court has essentially done so. For instance, as noted above, the Court directed the Clerk of Court to send a copy of its Order denying Plaintiff's motion for temporary restraining order to the Warden of FSP. See TRO Order at 4. In addition, following receipt of Plaintiff's Motion for Reconsideration, the Clerk of Court issued the Amended Standing Order, which operates to notify the Inspector General of an inmate's claim of suicidal intent or other imminent physical harm. See Order (Doc. 17). Moreover, according to the grievance documents Plaintiff provides with his Motion for Reconsideration, the Inspector General's Office already has received notification of his allegations of assault. See Reconsideration

Declaration at 9 (informing Plaintiff that his "allegation of excessive force on 9/16/2018 was previously referred to the Office of the Inspector General for review").

Accordingly, Plaintiff fails to demonstrate that the Court's Order denying his motion for preliminary injunction (Doc. 8) was based on a manifest error of law or fact. Jacobs, 626 F.3d at 1344. Rather, Plaintiff asks the Court to reexamine a prior ruling, which is not the purpose of a motion for reconsideration. Thus, he is not entitled to relief. However, in light of Plaintiff's allegations that Defendants and other officials have retaliated against him for filing a lawsuit and reporting sexual assault, the Court will direct the Clerk to send a copy of this order to the Office of the Inspector General for any action or investigation deemed appropriate.

## IV. Motion for Appointment of Counsel

In his Motion for Appointment of Counsel (Doc. 14; Counsel Motion), which Plaintiff supports with a memorandum of law (Doc. 15; Memorandum) and a declaration (Doc. 16; Counsel Declaration), Plaintiff claims that he is unable to afford counsel, the issues involved in his case are complex, he has limited access to the law library because he is a "segregation inmate," he has attempted to obtain representation, and he has limited knowledge of the law. See Counsel Motion at 1; Memorandum at 3-4; Counsel Declaration at 2.

A court may ask counsel to represent a person who cannot afford one. 28 U.S.C. § 1915(e)(1). But a plaintiff in a civil case does not have a constitutional right to counsel, and courts have broad discretion in deciding whether to appoint counsel. Bass v. Perrin, 170 F.3d 1312, 1320 (11th Cir. 1999). A court should appoint counsel in a civil case only if there are "exceptional circumstances." Id. In determining whether to appoint counsel, a

court may consider the type and complexity of the case, whether the plaintiff can adequately investigate and present his case, and whether the case proceeds to trial. Ulmer v. Chancellor, 691 F.2d 209, 213 (5th Cir. 1982) (cited with approval in Smith v. Fla. Dep't of Corr., 713 F.3d 1059, 1065 n.11 (11th Cir. 2013)). Plaintiff has not presented exceptional circumstances that would warrant the appointment of counsel at this time. Plaintiff has demonstrated an ability to present the facts of his case and assert arguments on his behalf. See Smith, 713 F.3d at 1065 ("The key is whether the pro se litigant needs help in presenting the essential merits of his or her position to the court."). The Court will deny Plaintiff's motion without prejudice to his right to renew his request later in the litigation process, such as if the case proceeds to trial.

**V. Motions for Temporary Restraining Order or Preliminary Injunction**

Plaintiff has filed three motions seeking injunctive relief. In his first "Motion for a TRO and Preliminary Injunction" (Doc. 19; First TRO Motion), Plaintiff states that he is being denied appropriate medical care. See First TRO Motion at 1. The medical care he claims to have been denied, however, is not related to the alleged use of force and sexual assault incident that is the basis of his Complaint. Rather, Plaintiff asserts that he is "an insulin dependent diabetic with a history of MRSA," and that since he was transferred to FSP, the "medical Doctor refuses to examine or treat [him] for his serious medical need." Id. He states that the denial of medical care has resulted in continued pain, fluid discharge, and problems walking. Id. at 2.

In support of his First TRO Motion, Plaintiff offers a declaration (Doc. 20; First TRO Declaration). Confusingly, in his declaration, Plaintiff refers to a denial of medical care related to a skin condition, psoriasis. See First TRO Declaration at 1-2. He asserts that

the FSP doctor refuses to prescribe refills of his approved medications without him accessing medical for a sick call. Plaintiff acknowledges that the doctor prescribed his requested medications in January and February of 2018, and again in July of 2018, but states that his other sick-call requests have been ignored or denied. Id. at 2, 3. Despite his sick-call requests being ignored or denied, the prison has assessed against his inmate account a $5.00 co-pay for each request he has made (up to fifteen), the charges of which he disputes. Id. at 2. Without his medication, Plaintiff has difficulty breathing (due to allergies) and walking. Id. at 3.

In his second "Motion for a Preliminary Injunction" (Doc. 21; Second TRO Motion), which he supports with a declaration (Doc. 22), Plaintiff seeks a return of his personal property. See Second TRO Motion at 1. Plaintiff asserts that he was placed on property restriction on September 13, 2018, and he is still missing 90% of his property, including religious books and legal resources. Id. at 2. Plaintiff states that the refusal to return his legal resources amounts to a denial of access to the courts. Id. at 4.

In his third "Motion for a Preliminary Injunction" (Doc. 23; Third TRO Motion), which he supports with a declaration (Doc. 24; Third TRO Declaration), Plaintiff asserts he is facing yet another form of retaliation. Plaintiff states that his family deposited money into his inmate trust account on June 29, 2018, and 100% of the money was applied to the cost of litigation, violating his due process rights. See Third TRO Motion at 1, 2. According to Plaintiff, the deduction of more than 20% of the preceding month's deposits amounts to an intentional "manipulation of the rules of proceeding" IFP. Id. at 3. In his declaration, Plaintiff further asserts that his personal property has been stolen leaving him with no soap, no cup, and no bowl. See Third TRO Declaration at 2.

"An injunction is an extraordinary remedy and the threatened injury the movant will suffer must be 'neither remote nor speculative, but actual and imminent.'" Bruce v. Reese, 431 F. App'x 805, 807 (11th Cir. 2011). Importantly, a request for injunctive relief is properly denied when the movant seeks relief with respect to claims outside those raised in the operative complaint. See Kaimowitz v. Orlando, Fla., 122 F.3d 41, 43 (11th Cir. 1997), opinion amended on reh'g, 131 F.3d 950 (11th Cir. 1997) ("A district court should not issue an injunction when the injunction in question is not of the same character, and deals with a matter lying wholly outside the issues in the suit."). See also Bruce, 431 F. App'x at 806 n.1. In his Complaint, Plaintiff seeks relief for injuries sustained following the alleged excessive use of force and sexual assault that occurred on September 16, 2018. He does not seek redress for any of the alleged constitutional deprivations he asserts in his TRO Motions. See Complaint at 7-8. To the extent he seeks injunctive relief for claims not pled in his Complaint, he is not entitled to such relief.

Moreover, the grievance documents Plaintiff provides in support of his TRO Motions do not support his claims. Thus, he fails to carry his burden of persuasion as to the four elements required for entry of a preliminary injunction. See Citizens for Police Accountability Political Comm. v. Browning, 572 F.3d 1213, 1217 (11th Cir. 2009) (per curiam) (identifying the four elements a movant must prove: "(1) a substantial likelihood of success on the merits; (2) irreparable injury absent an injunction; (3) the injury outweighs whatever damage an injunction may cause the opposing party; and (4) an injunction is not adverse to the public interest"). In support of his First TRO Motion, Plaintiff provides grievances apparently to demonstrate that he has been denied medical care (Doc. 19-1; First TRO Grievances). The grievance responses refute his assertions,

13

however. For instance, on June 28, 2018, Dr. Espino responded to Plaintiff's medical grievance, stating that his request for medication refills was denied because "there was no assessment showing [a] need for medication to be renewed." First TRO Grievances at 2, 3. Dr. Espino also noted that Plaintiff was seen at sick call on June 20, 2018, and he was told that he must schedule another evaluation for medication renewal. Plaintiff had an appointment scheduled "in the very near future." Id. at 3.

On August 21, 2108, in response to Plaintiff's complaint that he received no treatment for a pilonidal cyst, a grievance responder noted that he was "offered ibuprofen but [he] refused [it]." Id. at 11. On September 10, 2018, Dr. Espino responded to his formal grievance, stating that a sick-call nurse evaluated him on August 8, 2018, advising him to apply warm compresses and take ibuprofen, which he denied. Id. at 9. The doctor also noted that he had not "voiced any further complaints via sick call and/or by declaring a medical emergency." Id. On October 30, 2018, in response to Plaintiff's medical grievance seeking medication refills, Dr. Espino stated that Plaintiff was "scheduled to see the clinician on 10/16/18 but refused [his] call-out." Id. at 5. While Plaintiff disputes having declined call-outs, see First TRO Declaration at 3, he provides no evidence to support his self-serving statement.

Similarly, the grievance documents Plaintiff provides in support of his Second TRO Motion contradict his assertion that his personal property is being withheld (Doc. 21-1; Second TRO Grievances). For instance, on October 12, 2018, a grievance responder informed Plaintiff that "Property Room Sergeant Grady was contacted and advised [his] property has been pulled and placed on shelf for delivery when time permits." Second TRO Grievances at 3. On November 14, 2018, after Plaintiff submitted an additional

14

grievance, a grievance responder informed him that the Property Room Sergeant Grady had not "received any hardcover removal request from" Plaintiff and instructed him to complete the appropriate form. Id. at 7. Finally, with respect to the inmate trust account issue raised in Plaintiff's Third TRO Motion, a grievance responder informed him that funds were deducted to satisfy an inmate debt (Doc. 23-1 at 5). While Plaintiff disputes having had a debt, see Third TRO Motion at 4, his claim is unsubstantiated.

To the extent Plaintiff is encountering difficulties related to his inmate trust account or navigating the prison grievance system, this Court may not intervene on his behalf. See Bell v. Wolfish, 441 U.S. 520, 548 (1979) ("[T]he operation of our correctional facilities is peculiarly the province of the Legislative and Executive Branches . . . not the Judicial."). The Court may not entertain and resolve Plaintiff's various problems with prison life simply because he filed this civil rights action in which he alleges sexual assault and a denial of mental health care. If Plaintiff believes that he has suffered additional constitutional violations unrelated to the alleged sexual assault, he may initiate a new civil rights action by filing a new complaint.

Accordingly, Plaintiff's requests for injunctive relief are due to be denied. To the extent Plaintiff intends to pursue new claims that are unrelated to those raised in his Complaint here, he should initiate a new action by filing a new civil rights complaint. He may not amend his Complaint in this action to add new, unrelated claims. Moreover, to the extent Plaintiff desires a prompt resolution to his claim for alleged sexual assault, the Court notes that Plaintiff's filings are holding up the progress of the case. If the Court is to consider the merits of Plaintiff's claims, Defendants must be served. The Court reminds Plaintiff that he was to submit service copies of the Complaint by December 21, 2018.

See Order (Doc. 11). The Court will extend the time for Plaintiff to comply with that Order but encourages him to promptly and diligently attend to matters that will enable to the Court to reach the merits of the action. Additional motions asking the Court to intervene in matters of prison administration will only further delay the Court's ability to entertain the issues raised in Plaintiff's Complaint.

Accordingly, it is now

**ORDERED:**

1. Plaintiff's "Amended Memorandum of Law in Support of [His] Motion for a TRO and Preliminary Injunction" (Doc. 12) is **DENIED**.

2. Plaintiff's Motion for Appointment of Counsel (Doc. 14) is **DENIED without prejudice**.

3. Plaintiff's Motion for a TRO or Preliminary Injunction (Doc. 19) is **DENIED**.

4. Plaintiff's Motion for a Preliminary Injunction (Doc. 21) is **DENIED**.

5. Plaintiff's Motion for a Preliminary Injunction (Doc. 23) is **DENIED**.

6. The **Clerk** is directed to send Plaintiff a civil rights complaint form. To the extent Plaintiff wishes to pursue new claims, he should initiate a new action by filing a new civil rights complaint, using the provided form.

7. **By January 31, 2019**, Plaintiff shall submit to the Clerk of Court ten copies of the Complaint, including exhibits, for service of process on Defendants. Failure to comply may result in the dismissal of the action.

8. The **Clerk** is directed to send a copy of this Order to the Office of the Inspector General for any action or investigation deemed appropriate.

**DONE AND ORDERED** at Jacksonville, Florida, this 3rd day of January, 2019.

*[signature: Brian J. Davis]*

BRIAN J. DAVIS
United States District Judge

Jax-6
c: Allen Pullen, #M37913